# Exhibit B



Y. MICHAEL TWERSKY/ *SHAREHOLDER*
p. 215.875.3052 m. 267.559.1436 | mitwersky@bm.net

March 20, 2024

**VIA ELECTRONIC MAIL & FSX**

James. A. Pardo, Esq.
Lisa A. Gerson, Esq.
McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, NY 10017-3852

Re:   *State of Maryland v. Exxon Mobil Corporation, et al.*, Case No.: 1:18-cv-00459-SAG
      Response to March 13, 2024, Letter

Dear Counsel:

Plaintiff writes in response to Defendants' letter of March 13, 2024 ("Defendants' Letter").

## I.   Non-OCP Records/Objections at Deposition

Plaintiff agrees that the 30(b)(6) witnesses do not solely represent the Maryland Department of Environment ("MDE"), but Defendants' letter misrepresents the objections that Plaintiff's counsel has made during the 30(b)(6) depositions. Counsel has not objected to questions as being beyond the scope because the question concerned a State department or agency other than MDE. Rather, counsel has made this objection when defense counsel's questions were beyond the scope of the *noticed topics*.

The examples used in Defendants' Letter highlight this point. During the Focus Site 12 deposition, counsel asked "Was Mr. Keith trained in the proper installation and removal of underground storage tanks at the time he was on site at focus site 12 to witness those activities?" Tr. at 106:18-22. That question (and its follow-up) concerned the training of MDE personnel generally, and not the USTs or ASTs at a Site or their removal, which is the actual subject of topic 8. The propounded objection to scope had nothing to do with whether the witness was testifying for MDE, or on behalf of the State more broadly. For Focus Site 37, the deponent was asked about her understanding of the "Maryland Motor Fuel Inspection Program." Tr. at 185:15-22. That question did not address the supply of gasoline to a Focus Site, which is the subject of topic 7. Defendants may disagree as to whether topic 7 encompasses the question asked, but Plaintiff properly preserved its objection. In each instance, accordingly, counsel's objection to the question as being beyond the scope of the notice was properly made. The State acted within its right to preserve those objections, and the State will continue to make such objections.



## II. Water Management Administrative Records

Defendants' Letter misstates the scope of the topics and, therefore, the required preparation for the topics specified within the notice. The terms "potable wells"[1] and "sensitive receptors" appear in topics 13 and 14 of the notice. As Defendants have told the Court, topic 13 is specific to investigations previously conducted at a Focus Site,[2] while topic 14 concerns the need for water treatment or an alternate water supply for potable wells identified during such investigations. The State's designated witnesses consistently have been ready to address these issues about the investigation that took place at the Focus Sites. If Defendants believe that any additional investigation related to Water Management records is needed in advance of the deposition, so that the deponent can testify as to "any designated issue," please detail exactly what further information Defendants believe is captured within a specific topic as it actually has been noticed.

## III. Supply of Gasoline

As indicated by Defendants, the Parties agreed to address the substance of what records the comptroller may possess regarding gasoline supply, at or with respect to specific sites, during the discussion on Defendants' 30(b)(6) Notice of Deposition Regarding Gasoline Distribution in and into Maryland. The State's MDE witnesses will continue to examine the MDE files on a site-by-site basis.

## IV. Vicinity Sites

Plaintiff does not dispute that Defendants prevailed on their motion to compel testimony about specific topics related to the vicinity of Focus Sites. The State has conducted an extensive investigation to make sure that it complied with the Court's ruling. *See* ECF No. 755. However, Defendants ignore that the contours of the testimony to which they are entitled are limited to the topics in their deposition notice, and are further limited by their representations to the Court about what they were seeking to compel.[3]

---

[1] The term "Potable water" is also used in topics 28 and 30. The latter concerns taste and odor complaints and no disagreement exists on that topic. Topic 28 concerns sampling results that show the presence of MTBE or TBA in potable water at or in the vicinity of the Focus Site. To the extent the State possesses any information on this topic, the witnesses have been and will continue to be prepared to testify.

[2] Again, Defendants explicitly have stated these topics are limited to "sensitive receptors identified **in connection with** the Focus Site investigation, [and] not every receptor within the 2,500-foot radius." *See* ECF No. 750 at 4 (emphasis added). *See also* ECF No. 743 at 4 ("This topic seeks factual information about the scope of environmental investigation conducted under the State's regulatory scheme—specifically, where the State or the Responsible Party looked for potential contamination; and what, if any, action the State required with respect to sensitive receptors that were located nearby.")

[3] Defendants' letter incorrectly states that "Plaintiff was ordered to produce and prepare its witnesses with information responsive to designated issues – i.e., any Vicinity Site with soil or groundwater contamination." Defendants' Letter at 3. This statement is incorrect. There is no general designated issue seeking testimony "about

March 20, 2024
Page 3 of 6



### 1) Documents Produced

Plaintiff is under no obligation to produce every file for any site in the vicinity of a Focus Site irrespective of whether it contains information responsive to a deposition topic. Rather, Plaintiff is required to produce only those records sought by Defendants, specifically "[a]ll DOCUMENTS read, reviewed, considered, and/or relied upon by the deponent to prepare for this deposition or determine the facts related to any issue set forth in this Notice." *See* ECF Nos. 743-1 at Requests for Production No. 1. If a document does not relate to a designated issue, Plaintiff is under no obligation to use it to prepare for the deposition or to produce it to Defendants.

- ***Programs Searched***

Plaintiff is only obligated to search for Vicinity Sites that would have information responsive to a designated topic. To that end, Plaintiff has conducted a reasonable search[4] to ensure that it has identified sites that have files with responsive information from the Hazardous Waste Program, the Land Restoration Program, the Solid Waste Program, and the Water and Science Administration ("WSA"). Plaintiff also agrees to verify that the mining program does not have any relevant site information, and is in the process of further confirming that the WSA has no additional responsive information.[5]

- **Vicinity Site Files Produced**

As an initial matter, the selection of Site Files that Plaintiff gave to its witnesses to prepare for the Focus Site depositions, and thus produced to Defendants, was not "an effort to hamstring Defendants' ability to defend against the State's sweeping claims," but was meant to fully comply with the Court's Order granting Defendants' motion to compel. Plaintiff states that its general process for determining what files to give to its witnesses (and thus produce) is as follows:

1) Plaintiff did not give to its witnesses (and thus did not produce) Oil Control Program ("OCP") Vicinity Site Files that did not identify any contamination. Such files are not

---

any Vicinity Site with soil or groundwater contamination," but only certain topics about the environs of any such contaminated sites.

[4] Notably, during its motion to compel briefing and at the hearing, Defendants emphasized that they were not asking Plaintiff to conduct an arduous search. *See* ECF No. 750 at 3 ("Putting aside that Plaintiff has not identified how many MDE sections are actually at issue, the question is not if there is a single source from which Plaintiff can identify sites of interest, but if Plaintiff has a means to identify such sites without undue burden."); Hr. Tr. at 15 ("Now it's, 'But we'd have to talk to every department and every group in MDE.' Again, that's not what's required here. I think as you've seen in the papers, the parties have touched on two or three groups that might have relevant information.").

[5] Plaintiff notes that unlike topics 26-27 related to soil, groundwater, and surface water, which ask about all contaminants, topic 28 is limited to MTBE and TBA.

March 20, 2024
Page 4 of 6



   relevant to any noticed topic. Examples include files related only to compliance issues, tank installations, or tank pulls with no evidence of contamination.

2) Plaintiff generally gave to its witnesses for review any OCP Vicinity Site File within 2,500 feet of a Focus Site that it located after a reasonable search that contained information about groundwater contamination (whether MTBE or not). Plaintiff initially withheld a very small number of files, including in connection with groundwater flow, but will identify and produce those files, and agrees to produce all such OCP files moving forward.

3) In some limited situations, Plaintiff did not give to its witness for review OCP files that related to sites where the only noted contamination was soil contamination, especially where there was no actual analytical data but only a notation of soil contamination. This was, generally, not in connection with gasoline stations but with commercial properties and oil/diesel tanks. In connection with these sites, Plaintiff sometimes also considered the magnitude of soil contamination and identified groundwater flow direction in limiting its production. Plaintiff is willing to meet and confer about these files, but in line with the reason Defendants have expressed for needing Vicinity information, Plaintiff does not believe that it is necessary to have its witnesses review all such files at each site to be ready for a deposition.

4) As relates to non-OCP Vicinity Sites identified by the State, Plaintiff generally produced to Defendants the information it located related to contamination.[6] Focus Site 09 is an exception due to the sheer number of files involved.[7] For that Site, Plaintiff limited the identified sites based on an analysis of groundwater flow direction and the general hydrogeology in the vicinity of the Focus Site. Plaintiff agrees going forward to produce any non-OCP file that contains sampling results demonstrating groundwater contamination within a 2,500-foot radius. Plaintiff is also willing to meet and confer about files that discuss soil contamination.

  Plaintiff further states that, moving forward, for most Focus Sites, it will produce any site file in the vicinity of the Focus Site(s) exhibiting any groundwater contamination, and is willing to meet and confer about producing all files exhibiting quantifiable levels of soil contamination. Plaintiff will, however, alter this process for those locations with a significant number of environmental contamination cases surrounding the Focus Site, such as for Focus Sites 09 and 12. For these Focus Sites, it is unreasonable for the witness to review each such file when many will not be relevant. Therefore, Plaintiff proposes to produce to Defendants all files exhibiting groundwater contamination and provide Defendants with a list of those files that it

---

[6] Plaintiff did not pull compliance or permitting files from programs that are irrelevant to any designated deposition topic.
[7] Plaintiff will also produce some additional information in connection with FS12.

March 20, 2024
Page 5 of 6



gave its witness to review. If Defendants can articulate a reasonable basis as to why additional files are relevant, they can inform Plaintiff as needed for the State's witness to prepare.[8]

Finally, Plaintiff states that, contrary to footnote 2 in Defendants' Letter, the Court granted Defendants' motion to compel testimony about information responsive to Defendants' noticed topics about the vicinity of the Focus Sites. The Court did *not* grant open-ended, carte blanche inquiry as to neighboring sites. Plaintiff is not obligated to prepare its witnesses on Vicinity Sites except as to *noticed topics* for which relevant information may be contained in files for Vicinity Sites. Defendants, furthermore, have never requested all files for Vicinity Sites, but only those files "read, reviewed, considered, and/or relied upon by the deponent to prepare for this deposition or determine the facts related to any issue set forth in this Notice." *See* ECF No. 743-1. As such, Plaintiff is under no obligation to produce each file connected to a Vicinity Site, but only such files with relevant information used by its witnesses.[9]

### 2)    Vicinity Site Testimony.

The final two points in Defendants' Letter simply are inaccurate. The questions Plaintiff's counsel objected to were outside the scope of the noticed topics.

The questions raised by Defendants during the Focus Site 12 deposition were about the release at a neighboring station. Information about "dates, concentrations and locations" of detections of contaminants are relevant to noticed topics, but the source of that contamination and the time of release are not. Notably, Defendants cannot point to a single topic asking for this testimony.

Likewise, as relates to Focus Site 09, the requested testimony was not actually about remediation at the neighboring property, but rather any prohibition on the use of groundwater. This is not covered by topic 22, which asks for information about whether *additional* "INVESTIGATION and CORRECTIVE ACTION should be performed." Moreover, even if the requested testimony was covered by topic 22, Defendants themselves explained that topic 22 is limited to the Focus Sites. *See* Hr. Tr. at 16.[10]

Plaintiff is open to meeting and conferring on any issues related to Vicinity Sites.

### V.    Costs and Damages (Non-Oversight)

---

[8] Plaintiff notes that the two examples before the Court in its motion to compel were Sites where "the number of [vicinity] sites is not significant." ECF No. 750 at 3. However, for Focus Sites such as FS09 and FS12, this is not the case, and requiring a witness to prepare to testify as to all vicinity sites would be an extreme burden.

[9] Plaintiff is open to discussing producing all Site Files that can be located after a reasonable search related to any site for which it produces any information, but it will not make its witnesses review or prepare for information that is not relevant to any topic.

[10] Moreover, as relates to "zoning, land or water use restrictions," Defendants have long noted that for topic 31, it is sufficient for the witness to testify about "information in MDE's possession, custody or control and that was collected by or submitted to MDE in connection with the investigation at each Focus Site." ECF No. 743 at 6.

March 20, 2024
Page 6 of 6



    Plaintiff's witnesses will be prepared to testify generally (and, as agreed, not about the calculation) about the past costs it seeks to recover in this action (topic 35), and (to the extent such information is traceable) whether and how much money from the Maryland Oil Disaster Containment, Cleanup and Contingency Fund and/or the Oil Contaminated Site Environmental Cleanup Fund have been spent on each Focus Site on Non-Oversight activities due to the presence of MTBE and/or TBA in groundwater, surface water or soil at each Focus Site (topic 37). However, as Plaintiff has indicated in its interrogatory responses as to most Focus Sites, it will not seek to recover in this action any *past* costs other than Oversight Costs.[11,12]

### VI.     Tasks Performed and Time Spent on Oversight

    The State disagrees with Defendants' characterization of this issue in their Letter. However, as agreed, the State will prepare its witnesses to testify generally from the information that is available from Site records, including Daily Activity Form information about the general role of various employees, in connection with a given Focus Site.

    That said, Plaintiff did not agree to provide a witness to testify "as to the total number of hours spent on oversight at the Focus Site and the actual cost to the State of that oversight time." As Plaintiff repeatedly has stated, this issue is a subject for expert analysis and testimony.

    Plaintiff also agrees that it will prepare a witness in conjunction with one of the Focus Site depositions to discuss the Daily Activity Forms tables, what information they contain, and how to extract such information.

    Please let us know how Defendants wish to address these points.


Sincerely,

*[signature]*

Y. Michael Twersky


cc: All Counsel of Record (via LNFS)

---

[11] As is clear in Plaintiff's interrogatory responses, it **will** seek to recover all other forms of damages, including primary restoration, to which it is entitled.

[12] Note that during preparation for the FS12 deposition, Plaintiff identified certain records from Hess that indicate the State did spend money in connection with this Focus Site. The State is working to collect additional information.