IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STATE OF MARYLAND,<br><br>    Plaintiff,<br><br>    v.<br><br>EXXON MOBIL CORPORATION, *et al.*,<br><br>    Defendants. | Case No. 1:18−cv−00459−SAG<br>Hon. Stephanie A. Gallagher |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR EXTENSION OF CERTAIN EXPERT DEADLINE[S]**

Defendants respectfully submit this opposition to Plaintiff's Motion for Extension of Certain Expert Deadline[s].

Defendants have given Plaintiff numerous extensions and professional courtesies over the course of this litigation, but this would be Plaintiff's *third* extension of this particular deadline—a fact Plaintiff omits from its motion. More importantly, this third extension would directly contradict the Court's order, which the parties negotiated and agreed to, that Plaintiff would not receive any further extension of this deadline because such further delay "is not harmless and will prejudice Defendants." (ECF No. 842 ("CMO No. 13").) In fact, Plaintiff persuaded Defendants to agree to that order (and the second extension) specifically by promising that Plaintiff's failure to timely designate a supply expert by the second extended deadline would "result in Plaintiff being precluded from offering expert testimony on the topic of Gasoline Supply & Distribution as described under the entry 'T.B.D.' in Plaintiff's October 15, 2025, non-site-specific expert disclosures ('Plaintiff's Disclosure')." (*Id.*)

1

Ironically, while asking for approval to break the "shall be precluded" promise that it made and the Court ordered months ago, Plaintiff repeats the very same promise in its new proposed CMO. But "now we really mean it" is not an acceptable excuse for reneging on a prior negotiated Court order.

Plaintiff should be held to its prior admission that further extension would prejudice Defendants, and to its prior agreement that preclusion would result. Regardless, Plaintiff has failed to show good cause for another extension.

## BACKGROUND

In May 2025, the Court set an October 15, 2025, deadline for Plaintiff to disclose the identity of its non-site-specific experts, and a December 1, 2025, deadline for Plaintiff to serve those experts' reports. (ECF No. 818 § II.B.1, II.B.3.)

On the October 15 deadline, Plaintiff informed Defendants it had "recently learned that Mr. Burke"—Plaintiff's intended gasoline supply and distribution expert—"[was] no longer willing to serve as a non-site-specific expert in this matter." (Decl. of Lisa A. Gerson ("Gerson Decl.") ¶ 2, Ex. 1.) Plaintiff requested until November 12, 2025, to identify Mr. Burke's replacement, and Defendants agreed. (*Id.* ¶ 3.) Plaintiff provided no further details about Mr. Burke's withdrawal, or about Plaintiff's efforts between May and October to confirm Mr. Burke's retention. (*Id.* ¶ 4.)

On November 7, 2025, mere days before its new disclosure deadline, Plaintiff's counsel informed Defendants that Plaintiff would not be able to identify a new expert by November 12. (*Id.* ¶ 5.) However, Plaintiff stated that Mr. Burke's eventual replacement would submit his or her report by January 30, 2026—a 60-day extension from the then-existing schedule—and stipulated that if Plaintiff did not have a report to serve by January 30, it would accept preclusion on the topic

of gasoline supply and distribution. (*Id.* ¶ 6.) Based on Plaintiff's stipulation, Defendants agreed to Plaintiff's request for a second extension. (*Id.* ¶ 7.)

The parties' agreements were memorialized into Proposed CMO No. 13, which Plaintiff filed and requested the Court to "So Order." (ECF Nos. 841, 841-1.) The Court did just that, adopting and issuing CMO No. 13 on December 4, 2025. Pursuant to that CMO, Plaintiff was required to identify its Non-Site-Specific expert on gasoline supply and distribution by January 15, 2026, and to serve its expert report on gasoline supply and distribution by January 30, 2026. (CMO No. 13 §§ I.B.5, I.B.6.) Plaintiff further stipulated that its failure to meet the January 30 deadline was "***not harmless and will prejudice Defendants***. Therefore, ***such failure will result in Plaintiff being precluded from offering expert testimony on the topic of Gasoline Supply & Distribution*** as described under the entry 'T.B.D.' in Plaintiff's October 15, 2025, non-site-specific expert disclosures" (*Id.* § I.B.6.c.ii. (emphasis added).)

On January 14, 2026—one day before the disclosure deadline that already had been twice extended—Plaintiff contacted Defendants to say that it would not have an expert to disclose by the deadline. (ECF No. 849-1.) Plaintiff requested until January 21, 2026, to make its disclosure, and indicated it would reach out to Defendants after that disclosure "to discuss a short extension of the [January 30] deadline to serve the expert report." (*Id.*) This time, the reason given was that Plaintiff's intended replacement expert had an apparent conflict that had arisen that day. (*Id.*)

Plaintiff's motion reveals that Plaintiff now seeks to extend that report deadline to February 27, 2026. (ECF No. 849 at 5.) Notably, Plaintiff's proposed CMO contains yet another guaranty that should it miss this report deadline, it will *now* be precluded from offering expert opinion on the topic of gasoline supply and distribution (ECF No. 849-4 § I.B.7.a.ii)—ignoring the fact that Plaintiff is unilaterally reneging on that exact agreement by seeking this extension in

3

the first place. This Court should hold Plaintiff to its original agreement and deny the requested extension.

## ARGUMENT

When Plaintiff learned that it could not meet its November 2025 disclosure deadline, it could have unilaterally sought an extension of the case schedule from the Court, as it did this month. Instead, Plaintiff sought to submit a revised, proposed CMO "on consent" and, to induce Defendants' consent, Plaintiff stipulated that the new January 2026 deadlines would be final deadlines, and conceded that Defendants would be prejudiced by additional delay. Plaintiff should be held to its stipulation and be precluded from submitting an expert report on gasoline supply and distribution. *See Roger E. Herst Revocable Tr. v. Blinds to Go (U.S.) Inc.*, No. CIV.A. ELH-10-3226, 2011 WL 6409129, at *12 & n.18 (D. Md. Dec. 20, 2011) (refusing to disregard parties' stipulation on damages and stating, "[u]nder federal law, stipulations ... are generally binding on the parties and the Court." (citations omitted)).

Even if Plaintiff had not already conceded that Defendants would be prejudiced, this Court's precedent supports the concession. "The entire purpose of scheduling orders is to provide concrete deadlines on which the parties can rely in planning their respective litigation strategies." *Blind Indus. & Servs. of Maryland v. Route 40 Paintball Park*, No. WMN-11-3562, 2012 WL 4470273, at *2 (D. Md. Sept. 26, 2012) (Gallagher, J.) (noting a Scheduling Order "is not a frivolous piece of paper, idly entered[.]"). "These deadlines allow parties to estimate the costs that will be incurred as they move towards trial, and to make informed decisions on strategic motions and settlement negotiations." *Id.* (denying motion to compel discovery past court ordered deadline and stating, "this Court will not allow Defendant's disregard for the Local Rules and Scheduling Order to delay this case or to compel [plaintiff] to incur additional costs."); *see also, e.g.*, *Parks v.*

*Huff*, 955 F.2d 42 (4th Cir. 1992) (acknowledging that time and expenses incurred due to opposing party's delay constitute prejudice); *Laios v. MTM Builder/Dev. Inc.*, No. GJH-13-2953, 2014 WL 6066017, at *3 (D. Md. Nov. 12, 2014) (acknowledging prejudice to party for "added expenses, aggravation, and unnecessary delay" and awarding attorney's fees).[1]

Here, Plaintiff's repeated extension requests continue to drag this case out far beyond original estimates of time and costs—the instant delay is just one more example.[2]

And while Plaintiff contends that there is no prejudice because it *previously* agreed that its forthcoming expert report will contain opinions "substantially similar" to those previously described by Mr. Burke, Defendants cannot conceive of how Plaintiff can make that representation about an expert it only "connect[ed] with" and "initiated the process of confirming and retaining" two days before filing its motion. (ECF No. 849 at 3.) Nor does it matter that the subject of the forthcoming report "relates to Defendants' own business operations" and, thus, purportedly that Defendants already possess "the information that forms the basis of these opinions[.]" (*Id.* at 3.) The prejudice to Defendants in this regard is not whether they already possess factual information

---

[1] Plaintiff's cited case law does not support the extension requested here. In *CBX Technologies, Inc. v. GCC Technologies, LLC*, the court found that plaintiff "ha[d] *not* demonstrated good cause under Rule 16(b)(4) for amending the scheduling order." Civ No. JKB-10-2112, 2012 WL 3038639 at *4 (D. Md. July 24, 2012) (emphasis added). And *Tawwaab v. Virginia Linen Service, Inc.*, is simply inapposite. 729 F. Supp. 2d 757 (D. Md. 2010). There, the court granted a motion to amend a complaint after the amendment deadline because the plaintiff had not received documents supporting the proposed amendment until several months after the deadline. *Id.* at 770.

[2] As further examples, earlier in the case, Plaintiff sought and received a three-month extension to complete Focus Site fact depositions. *Compare* ECF No. 758 (setting December 18, 2024, completion deadline for Focus Site fact depositions); ECF No. 779 (extending deadline for Focus Site fact depositions to March 14, 2025). Defendants also agreed to two prior extensions of Plaintiff's deadlines for service of its Focus Site expert reports. *Compare* ECF No. 818 at § II.A.3 (setting Plaintiff's final Focus Site expert report deadline as October 3, 2025); ECF No. 828 at § II.A.3 (extending Plaintiff's final Focus Site expert report deadline to October 17, 2025); ECF No. 830 at § II.A.3 (further extending Plaintiff's final Focus Site expert report deadline to November 21, 2025).

underlying the forthcoming opinions. The prejudice to Defendants includes not yet having Plaintiff's gasoline supply and distribution expert *opinions*, while at the same time certain of Defendants experts are (or shortly will be) working to respond to other related topics without having the full picture of Plaintiff's experts' opinions.[3]

Finally, Plaintiff's motion does not meet the good cause standard to amend a Court's scheduling order for the additional reason that it fails to demonstrate Plaintiff's diligence. Other than a conclusory statement that counsel learned of a conflict the day before the existing disclosure deadline, Plaintiff presents no sworn statement (or any statement) explaining the diligent efforts it made to retain the new expert over the last three months—including its process for reviewing and clearing any conflicts.

*** 

For the foregoing reasons, Defendants' respectfully ask the Court to hold Plaintiff to its prior agreements and deny its motion for an additional extension of its supply and distribution expert deadlines.

---

[3] For example, certain of Defendants' experts will be responding not only to the unnamed supply and distribution expert, but also to Mr. Andress's December 1, 2025, report on ethanol production, supply and demand, and to Mr. Tallett's forthcoming January 30, 2026, report on feasibility and economics of gasoline oxygenates.

Dated: January 20, 2026

Respectfully submitted,

_____
James A. Pardo
Lisa A. Gerson
MCDERMOTT WILL & SCHULTE LLP
One Vanderbilt Avenue
New York, New York 10017
(212) 547-5400
jpardo@mwe.com
lgerson@mwe.com

*Counsel for Exxon Mobil Corporation, ExxonMobil Oil Corporation and on Behalf of Defendants as Liaison Counsel*